Mark J. Geragos
California State Bar #108325
GERAGOS & GERAGOS
644 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 625-1600

Jon D. Williams (8318)
9 Exchange Place, Suite 600
Salt Lake City, UT 84111
Telephone: (801) 746-1460
Facsimile: (801) 998-8077

*Attorneys for Lev Aslan Dermen*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LEV ASLAN DERMEN,<br><br>Defendant. | **DEFENDANT LEV DERMEN'S MOTION FOR RECONSIDERATION RE ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION FOR RELIEF FROM ORDER GRANTING MOTION FOR JAMES HEARING AND SUPPORTING MEMORANDUM**<br><br>Case No.  2:18-CR-00365-JNP-BW<br><br>Honorable Jill N. Parrish<br>Magistrate Brooke C. Wells |

Defendant Lev Aslan Dermen ("Mr. Dermen"), pursuant to Fed. R. Crim. P. 12(b), hereby moves for a Stay of the Court's Order Granting in Part and Denying in Part Motion for

Relief from Order Granting Motion for James Hearing (the "Order"), filed on May 29, 2019, Dkt. 322, and submits this supporting memorandum.

## INTRODUCTION

It is apparent from the Court's recent Order that the government believes the issues involved in *a case about renewable fuel tax credits* - warrant stripping the accused defendants of their Constitutional rights of Due Process. It is unfathomable that now, 10 months later, three men remain detained waiting for trial on a tax credit case. However, recent rulings by this Court resulted in treatment of these defendants as though they are detained for national security offenses. In fact, the constitutional deprivations that continue to stack up in this case, are even more so than if they had violated national security. This is because even in national security cases, those defendants receive more due process, and more protection of their constitutional rights than the defendants have received thus far in this case. Specifically, the Court's recent *ex parte* meeting with the government, which excluded defense counsel from previewing the evidence and participating in the adversarial process, led to the Court's decision to modify a prior order without any input from the defendants. This action by the Court was a clear usurpation of authority and an attempt to coopt the defense. The Court should stay its Order until the defense can present its own *ex parte* argument on these issues.

## PROCEDURAL BACKGROUND

In an Order filed March 14, 2019, Dkt. 234, the Court set a firm trial date of July 29, 2019. Later, in the Trial Order, filed April 5, 2019, Dkt. 256, the Court ordered the government to provide all Jencks materials to defendants by June 3, 2019. The Court allowed some of that

material be labeled "attorney eyes only," and specified that these AEO materials could not be shared by defense counsel with the defendants until July 15, 2019.

After a motion for a pretrial James hearing submitted by defendant Sally Kingston, Dkt. 295, and later joined by Mr. Dermen, Jacob, Isaiah, and Rachel Kingston, and to which the government had an opportunity, and did, respond, the Court granted the motion in its May 16, 2019, Order Granting Motion for James Hearing ("Order for James Hearing"). In that Order, the Court ordered the government to file, by June 3, 2019, a written proffer of facts to prove the existence of the alleged conspiracies and each defendant's alleged knowing participation in them. The Order for James Hearing set defendants' deadline to file objections as June 17, 2019 and set a hearing for June 20, 2019.

The Order for James Hearing also set a deadline of July 3, 2019, for the government to submit a document containing each statement it seeks to introduce at trial pursuant to Rule 801(d)(2)(e). The Court set a hearing for July 22, 2019, to address those statements.

On May 29, 2019, at 11 am MTD, the government filed a Motion for Relief from Order Granting Motion for James hearing (the "Motion for Relief"), Dkt. 320. In its Motion for Relief, the government argued it had presented its reasoning for safety concerns of certain "High Concern" witnesses during the *ex parte* hearing on the day prior – May 28, 2019. The government argued that the Court's Order for James Hearing would compromise the safety of these certain witnesses.

By 6:00pm MTD *that very same day,* the Court granted the Motion for Relief precluding the defendants any meaningful opportunity to respond. In the Order, the Court granted the

government's request for additional time to submit its proffer to prove the existence of the alleged conspiracies and each defendant's alleged knowing participation in them– from June 3 to June 6 instead – while shortening the defendants' time to respond, even though the government stated its ability to disclose most Jencks material by June 3.  Additionally, the government has been investigating and in possession of the evidence since 2016.  The reason for the extra three days granted to the government and taken from the defendants' time to respond is inexplicable.  Even more troubling and detrimental to the defendants, the Court allowed the government to exclude reference to "High Concern" witnesses from its June 6th proffer and from its July 3rd disclosure requirements. The Court has allowed the government to withhold disclosure of these "High Concern" witnesses -- and only if the court finds it necessary -- until July 9 – only one week before defendants' deadline to object to the identified statements, and only 20 days before trial is set to begin.

## ARGUMENT

**I.  THE COURT'S *EX PARTE* MEETING WITH THE GOVERNMENT DENIES MR. DERMEN DUE PROCESS**

Defendants faced with disclosure issues relating to national security and classified information are afforded more due process than the defendants in this case. As the Supreme Court stated, "[o]ur judicial system is designed to function in the context of adversary proceedings. Therefore, we are reluctant to authorize *ex parte, in camera* determinations unless they are truly necessary to protect important governmental interests." *Erckman v. United States*, 416 U.S. 909, 914–15 (1974). The Court held that was true even in the face of strong

governmental interests such as grand jury secrecy and national security issues. *Id*. at 915. This case, however, deals with issues far less important than grand jury secrecy or national security. This case deals with alleged fraud on the government relating to biofuel tax credits. If witness safety is a concern, there are far less unconstitutional and far less intrusive ways of dealing with such concerns. For example, the government could put the witnesses under government surveillance for their safety or could otherwise provide for their protection. When constitutional rights and due process are at stake, such expenses are justified.

In fact, there is no other area of law where security concerns are more intense than in cases relating to national security issues. Yet in those cases, the defense still has a right to see discovery and participate in the adversarial process. *See United States v. Aref,* 533 F.3d 72, 80 (2d Cir. 2008) (government's privilege to protect classified information "must give way" when discovery is helpful or material to the defense). Indeed, even where national security is at stake, Congress warned that "the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without the Act." S. Rep. No. 96-823, at 9 (1980). *See also, e.g., United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988). Courts require that such information cannot be withheld if it would be helpful or material, even if it would not be "favorable in a *Brady* sense." *Aref*, 533 F.3d at 80.

Even the Federal Rules of Criminal Procedure illustrate Congress's disfavor of *ex parte* proceedings. Rule 16(d)(l) states that a court "may" permit a party to show good cause for a protective order through an *ex parte* statement. Congress amended the language of proposed Rule 16(d)(l) from requiring *ex parte* proceedings at the request of a party to permit such

proceedings. The House Judiciary Committee observed that in determining whether to proceed *ex parte*, a court should "[bear] in mind that *ex parte* proceedings are disfavored and not to be encouraged." Rule 16, Fed.R.Crim.P., Advisory Committee Notes.

Simply, *ex parte* proceedings are exceedingly disfavored. As the Sixth Circuit has cautioned, "[d]emocracies die behind closed doors." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002). As the Ninth Circuit has observed, "ex parte proceedings are anathema in our system of justice." *Guenther v. Commissioner of Internal Revenue,* 889 F.2d 882, 884 (9th Cir. 1989), *appeal after remand*, 939 F.2d 758 (9th Cir. 1991).

In *United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004), the Second Circuit emphasized the importance of open, adversary proceedings, declaring that "[particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to *correct or contradict arguments or evidence offered by the other.*" *Id*. at 321 (emphasis added).

Finally, *ex parte* proceedings relating to discovery issues present an overwhelming danger of erroneous decisions. The Court cannot, and should not, function as Mr. Dermen's surrogate counsel. The relevance and materiality of particular witness statements, or the exculpatory nature of such evidence, is not readily apparent except to those with intimate knowledge of the factual details as well as the full scope of discovery. The Court is not tasked with being a zealous advocate for the defense; that is defense counsel's job. Indeed, given the volume of discovery, the variety and complexity of the charges in the Indictment, the language and geographic diversity of the evidence and witnesses, and the charges' technical complexity, it

would be impossible for the Court to make the appropriate determination regarding the government's motion to preclude production of material absent a meaningful and substantive contribution from defense counsel; that cannot occur in an *ex parte* setting. "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States,* 384 U.S. 855, 875 (1966). The Court should stay the Order until the defense can be heard on this issue.

In reality, though, there is no way the Court or the defendants know if these so-called "High Concern" witnesses are under threat. The government offers no criteria upon which it based such evaluations, and the Court similarly failed to provide any such criteria. The defendants had a right to be heard on this issue and to be part of this adversarial process prior to the Court's ruling. And the defendants have a right to know the criteria under which the government, and the Court, has designated these witnesses as "High Concern."

Considering the government received this *ex parte* opportunity to persuade the Court to modify a prior order without input from the defendants, especially in light of the fact that the scheduling order set forth by the Court was intended to be final, it is highly inappropriate to permit only a few weeks notice regarding key witnesses. Moreover, Mr. Dermen has been detained since August 2018, and therefore, defendants cannot adequately prepare for a trial involving 46 counts, five defendants, hundreds of boxes of documents, and multiple terabytes of discovery. Allowing the government to withhold the identities and information relating to "High Concern" witnesses will delay the trial, prejudice the defendants, and violate their Sixth Amendment right to confront the witnesses against them.

**II.    THE COURT'S CHANGES TO ITS SCHEDULING ORDER ARE HIGHLY PREJUDICIAL TO THE DEFENDANTS' PREPARATION OF THEIR DEFENSE**

The Court's latest Order is in direct contravention to its Trial Order and briefing schedule, which required the government to produce all Jencks material by June 3. Allowing the government to withhold disclosure of certain witness statements, even where those statements might put a witness at risk, until seven days before Mr. Dermen must object to those statements used against him, will foreclose the defendants' ability to adequately prepare for trial. *See United States v. Wright*, No. 00-40024-01-SAC, 2001 WL 1456856, at *1 (D. Kan. Oct. 10, 2001). In *Wright,* the district court held,

> The court's impression is that *the volume of such information, its detailed nature, and the likelihood of it generating additional investigation warrant disclosure* earlier than the fourteen-day period offered by the government. The court must balance this concern against the risk to witnesses, the burden of increasing security for those witnesses, and the expected effectiveness of this increased security. The court concludes that disclosure thirty days prior to trial will expedite the trial proceedings and provides a sufficient and fair amount of time for the defendants to prepare for trial, including effective cross-examinations, without unduly extending the increased risk to witnesses' safety and without placing unreasonable burdens on the government to reinforce and raise its protection of witnesses.

*Id*. (emphasis added). Despite the "sound and substantial justification for its concern over witness safety," the court in *Wright* ordered disclosure earlier than the government requested. After all, it is the criminal justice system, and not the witness justice system or a witness protection program.

In this case, there are hundreds of boxes of documents and multiple terabytes of discovery.  The government has recently made unsubstantiated claims that Mr. Dermen is the

mastermind and leader of all the conduct charged in the entire Indictment. By allowing one week to object to witness statements, so close to trial, effectively denies Mr. Dermen's ability to adequately prepare. The Court's new timeline is wholly prejudicial causing severe denial of Mr. Dermen's Constitutional due process rights. The Court should require the government to disclose the identity, and the statements, of these "High Concern" witnesses according to the original Order for James Hearing, which is already later than the defendants requested.

### III.  THE GOVERNMENT'S DESIGNATION OF CERTAIN WITNESSES AS "HIGH CONCERN" IS SUSPECT, TROUBLING, AND SIMILARLY PREJUDICIAL

Of note, defendants have been made aware that on Friday, May 31st, 2019, CBS will air a new episode of its nationally syndicated television series *Whisteblower* hosted by Judge Alex Ferrer, titled "Whistleblower – Polygamy, Power and Profits: The Case Against the Kingstons," featuring Bryan and Mary Nelson, who are self identified "whistleblowers" and claim to have tipped off the federal government to the issues in this case. See Exhibit A, "Whistleblower – Polygamy, Power and Profits: The Case Against the Kingstons," episode trailer here.[1] "Whistleblower," is a tabloid entertainment report featured on CBS's entertainment webpage-- not be confused as national news programming. Mary Nelson is a former member of the Davis County Cooperative Society, or the polygamous "Order," which the charges in the Indictment revolve around. In the episode trailer, Mary Nelson states that she blew the whistle on the Order after escaping its polygamous grip. Mr. Dermen has no relationship or connection to this Polygamous Order. Not only could this presentation be highly prejudicial to the jury pool on a

---

[1] https://www.cbspressexpress.com/cbs-entertainment/video?watch=6dmk6agx6z.  An original and one copy of Exhibit A will be lodged with the Court in a conventional CD format, and will be provided electronically to all counsel.

local and national level but, it raises questions as to who the Nelsons are and what the government is withholding regarding their testimony. For instance, are they included in these "High Concern" witnesses that the Court has allowed the government to delay disclosing details about, allegedly for their own safety? If so, that claim is contradicted by their voluntary presence on national television.[2]

Mr. Dermen has no relationship or involvement with the Polygamous Order. Yet over 100 of the government's witnesses, including an unknown number of these "High Concern" witnesses, are employed by or related to the Polygamous Order in some way. From the Court's Order, however, it appears it is allowing the government to withhold information related to witnesses Mr. Dermen has no knowledge of, and *who have no knowledge of him*, as a non-Polygamous Order and improperly-joined defendant. Mr. Dermen cannot adequately prepare a defense without knowing who will be testifying against him, and he cannot guess who the government might be relying on because he is not, and has never been, related to the Polygamous Order. If the "High Concern" witnesses the government is withholding information about are related to the Polygamous Order, Mr. Dermen has a right to know who they are and what their evidence will be, since he has no connection to them or to any of their supposed safety concerns.

---

[2] The fact that the Nelsons – employees of the Davis County Cooperative Society (the "Order") bank – are appearing on television highlights the issues Mr. Dermen raised in his Motion to Sever, that this case is centered around the Order and Order-related businesses and activities, and that including Mr. Dermen in this joint trial, where he has no relation to the Order, will confuse the jurors and prejudice his case. In fact, Mr. Dermen's counsel has been contacted by a local journalist regarding the case, and he intends to publish an extensive article on Friday, May 31, 2019. This reporter is the designated report on polygamous issues in Utah at the Salt Lake Tribune. This case will revolve around this issue, which Mr. Dermen has nothing to do with.

Simply, the Court's Order will prejudice Mr. Dermen's ability to adequately prepare for trial and adequately defend himself.

## CONCLUSION

Mr. Dermen should have received an opportunity to be heard by the Court on the government's Motion for Relief and its request to withhold disclosure of certain witnesses. The Court should stay its Order pending such opportunity. In the alternative, the Court should reinstate the original Order for James Hearing with its associated deadlines.

Dated May 31, 2019

/s/ Mark J. Geragos
MARK J. GERAGOS
GERAGOS & GERAGOS
644 Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Email: geragos@geragos.com
*Attorneys for Lev Aslan Dermen*

## CERTIFICATE OF SERVICE

I hereby certify that I filed a true and correct copy of the foregoing, on thne case styled *United States of America v. Lev Aslan Dermen*, this 31st day of May, 2019, with the Clerk of the Court using CM/ECF, which sent notification of the filing to all parties registered to receive such notice in the case.

<u>/s/    Mark J. Geragos</u>